UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| CHRIS J. ANDERSON, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) No. 4:18CV316 RLW |
| ANDREW M. SAUL,[1] Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of Defendant's final decision denying Plaintiff's applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and for Supplemental Security Income ("SSI") under Title XVI of the Act. For the reasons set forth below, the Court reverses the decision of the Commissioner and remands for further proceedings.

## I. Procedural History

On April 25, 2014, Plaintiff protectively filed applications for DIB and SSI, alleging disability beginning December 5, 2013 due to a back injury (broken back and new injury); headaches from neck and spine problems; rotator cuff injury; arthritis in shoulders and hands; left ankle problems; limited education and mental ability – learning disorder; depression from pain; and inability to sleep at night because of pain and headaches. (Tr. 11, 121, 173-80)

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Acting Commissioner Nancy A. Berryhill as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Plaintiff's claims were denied, and Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 96-117, 120-25, 128-29) On September 13, 2016, Plaintiff testified at a hearing before the ALJ. (Tr. 25-56) In a decision dated January 9, 2017, the ALJ determined that Plaintiff had not been under a disability from December 5, 2013 through the date of the decision. (Tr. 11-20) On December 26, 2017, the Appeals Council denied Plaintiff's request for review. (Tr. 1-3) Thus, the ALJ's decision stands as the final decision of the Commissioner.

## II. Evidence Before the ALJ

At the September 13, 2016 hearing, Plaintiff appeared with counsel. Plaintiff testified that he was 53 years old and finished either the seventh or eighth grade. When he was 15 years old, Plaintiff broke his back in a car accident. He dropped out of school after the school told him he could not go to high school or graduate. (Tr. 29-30)

Plaintiff took several heart medications including nitro, Crestor, Citalopram, Lisinopril, Carvedilol, Prozac, Mobic, Tylenol, Meloxicam, and Effi. He had a heart attack four years ago which required the placement of three stents. He testified that he was currently being treated for high cholesterol, high blood pressure, heart disease, and depression. He used nitroglycerin three times in the past month but did not go to the emergency room. On one occasion he went to urgent care but was sent home. (Tr. 30-33)

Plaintiff testified that he had been in several car accidents. After an accident in December of 2013, Plaintiff was unable to return to his work as a painter. He was treated by a chiropractor and an orthopedist and was advised to do exercises. Plaintiff had recently received an injection by Dr. Graven, who recommended surgery. (Tr. 33-35)

Plaintiff stated that he last used alcohol about three weeks ago. He basically quit because he was an alcoholic. He testified that he last attended AA meetings in 2000 or 2001 and had last

2

seen a psychiatrist in the 1990s. After Plaintiff's 2013 car accident, he attempted to return to work after his doctor released him. However, Plaintiff tried working for about three months before determining that he was unable to work. Plaintiff testified that he did not try to find work that involved less strenuous work than his job as a painter because his reading disability prevented him from doing much. (Tr. 35-36)

Plaintiff last saw his cardiologist in 2013 for some tests. He applied for, but did not receive, Medicaid. He received food stamps and help from his brother. Plaintiff lived in a trailer with a roommate, and they were both responsible for performing household chores. Plaintiff did the yard work with a self-propelled push lawn mower. Plaintiff and his roommate did the shopping, but Plaintiff was the only one who drove. They cared for two dogs. Plaintiff further testified that he smoked about 15 cigarettes per day, down from three packs a day. Plaintiff took medication and performed stretches during the day to relieve pain. Plaintiff's pain was concentrated in his back and round his left sciatic nerve. (Tr. 36-40)

During the day, Plaintiff watched cable TV when he was not performing household chores or yardwork. He had five children, and he saw his youngest children, ages 15 and 16, every other weekend. He talked to them on the phone and drove over to their house. Plaintiff also had a three-year-old grandchild. He did not participate in any other activities outside the home. (Tr. 40-41)

Plaintiff stated that most of the day the level of his back pain was around a six or seven out of ten. The pain would subside when he rested in his bed. When he performed certain chores like cutting grass, his pain level was an eight or nine. Cutting the grass took about three hours because Plaintiff needed to take breaks. Washing dishes and coughing also caused his pain level to increase. Plaintiff no longer used a TENS unit. He received injections which provided a

lot of relief and lasted about two weeks. However, after that time the pain in his sciatic nerve returned. Plaintiff took Tylenol and needed to lie down frequently for about 30 to 45 minutes in order to relieve pain. He also sat in a lawn chair in his bedroom. (Tr. 41-44)

Plaintiff further testified that he would not be able to pick up a gallon of milk and move it around a table for eight hours a day because the pain would be too strong. He also stated that he needed an operation on his left hand as a result of being a painter for 35 years. When Plaintiff experienced chest pain, he took nitro and relaxed for the rest of the day. Plaintiff previously had an MRI of his back and both hips because his sciatic nerve was bothering him. However, the MRI report was not in the medical records. The ALJ agreed to leave the record open for two weeks to obtain additional records. (Tr. 44-46)

A vocational expert ("VE") also testified at the hearing. The ALJ questioned the Plaintiff about his past work. Plaintiff stated that he worked as a painter for 37 years performing industrial and commercial painting, hanging drywall, taping, and climbing ladders. On a typical day, he lifted and carried up and down a ladder a large container of paint weighing around 75 pounds. He also dragged a paint gun with long and heavy hose laden with steel. The VE testified that Plaintiff's past work as a painter was skilled and medium work, heavy to very heavy as described by Plaintiff. (Tr. 47-51)

The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age of 53, with limited education and Plaintiff's past work history as a painter. The person could work at the light exertional level with additional limitations, including occasional climbing of ramps and stairs, stooping, and crouching. He could never climb ladders, ropes, or scaffolds; and never kneel or crawl. Plaintiff should have no exposure to hazards, such as unprotected heights and dangerous machinery. He could have only occasional exposure to vibration and could frequently

4

use his upper extremities for handling and fingering. Based upon this hypothetical, the VE testified that Plaintiff's past work was not available. However, the individual would be able to perform occupations such as a fast food worker, cashier, and information clerk. (Tr. 51-53)

The ALJ then asked a second hypothetical which added the requirement to alternate between standing and sitting every hour from one to three minutes, but would remain on task. Given this hypothetical, the person could work as a furniture-rental clerk, information clerk, and photocopy machine operator. (Tr. 53-54)

The VE further testified that if the individual missed work in excess of two days on a regular basis, the person would not be able to maintain competitive employment. In addition, if the ALJ added a mental limitation of performing only simple, routine tasks, the person could still perform the positions set forth by the VE. However, if the individual would be off task by either needing to lay down to relieve pain or for other reasons for at least an hour a day beyond regularly schedule breaks, the competitive employment would be precluded. (Tr. 54-55)

In a Function Report – Adult, Plaintiff stated that his conditions limit his ability to work because he was limited in bending, lifting, squatting, and kneeling. His back and rods hurt, and his back would swell. He could hardly move, and he noted that he had 3 heart attacks. During the day, Plaintiff ate breakfast, took his pills, watched TV, looked at the flowers in the yard, ate lunch, ate dinner, and went to bed. He cut the lawn once a week and sometimes sat outside with the dogs. Plaintiff also helped Sandy with her spine machine and helped her up when she fell. Plaintiff stated that he had trouble sleeping because of pain. He cared for his personal needs and did not require reminders. Plaintiff prepared his own meals daily but sometimes had to sit while cooking because of his back pain. He was able to do laundry, dust, wash dishes, and mow the yard. He was also able to shop in stores for food once or twice a month and could handle money.

His interests included watching TV, motorcycles, piddling in the yard, and playing games with his kids. Plaintiff was able to spend time with neighbors and grocery shop. He had no problems getting along with others, and his social activities had not changed since his conditions began. (Tr. 221-25)

Plaintiff stated that his conditions affected his ability to lift, squat, bend, stand, kneel, and climb stairs. He believed he could walk a couple of blocks before needing to rest up to 15 minutes. Plaintiff was unable to pay attention for long, and he could not follow written instructions because he read at a 3rd grade level. He could somewhat follow spoken instructions and was able to get along with authority figures. Plaintiff further stated that he could not handle stress or changes in routine. He used a back brace prescribed by a doctor and knee/ankle/wrist braces that were not prescribed. (Tr. 226-27)

### III. Medical Evidence

On January 31, 2014, Plaintiff saw Dr. Thomas Lee after a recent motor vehicle accident. A CT scan of the T-spine showed prior fixation hardware in the lower thoracic region and no thoracic vertebral body compression. A CT scan of the LS-spine indicated compression irregularity at L1 and narrowing of the central canal at T12-L1, L3-L4, and L4-L5. Upon examination on February 11, 2014, Dr. Lee found no spine deformity. Plaintiff was not in acute distress but was tender at C6, in the spinous process, and just right of the midline. Dr. Lee assessed T8-9 supraspinous ligament strain and C3-4 hypermobility, possible C5-6 protrusion. Dr. Lee prescribed Tramadol and physical therapy. (Tr. 319-24)

A letter dated May 29, 2014 from the Special School District contained documents dated January 1980 and June 1980 pertaining to Plaintiff's IEP evaluations. A Wechsler Adult Intelligence Scale assessment revealed a verbal IQ of 93, Performance IQ of 111, and a Full

Scale IQ of 100, resulting in an average range of intelligence. The test also showed significant weakness in short term auditory memory. His academic achievement was at late-2nd to mid-3rd grade level in reading and spelling. Plaintiff's diagnosis was behaviorally disordered/learning disabled. (Tr. 296-302)

On September 17, 2014, Plaintiff underwent a consultative examination with Austin Montgomery, M.D. Plaintiff's medical history included a car accident when he was 15 which resulted in a back injury and surgery. Plaintiff was in a second accident in December of 2013. Physical examination of the back showed tenderness mid-thoracic all the way down. There was also tenderness in his neck/cervical area and over the lumbosacral spines and left hip. Plaintiff had normal gait and station but could not walk on his toes. Dr. Montgomery assessed coronary artery disease, post MI three times, also stenting; angina; paroxysmal nocturnal dyspnea; shortness of breath; edema; chronic back and neck pain due to old injuries; history of kidney stones; hypertension; and history of hyperlipidemia. Range of motion testing revealed pain in the right shoulder; weakness and pain in Plaintiff's left hand; and pain in Plaintiff's back caused by upper-extremity strength testing. (Tr. 354-62)

A psychological evaluation on that same date showed unspecified depressive disorder; history of alcohol use disorder, status uncertain; history of unspecified learning disorder per IEP records; prior history of cocaine use disorder; and unemployment. Kimberly R. Buffkins, Psy.D., opined that Plaintiff's prognosis was fair and that abstaining from alcohol, initiation of health counseling, and vocational rehabilitation could enhance Plaintiff's ability to maximize his potential. (Tr. 365-68)

Plaintiff returned to Dr. Lee in January 2016 for complaints of back pain. Dr. Lee assessed degenerative joint disease of the lumbar spine with severe paraspinal muscle spasm. He

referred Plaintiff to a chiropractor. An MRI of the lumbar spine on April 8, 2016 revealed metal rods in the thoracolumbar spine completely obstructing detail in the canal down to T2; moderate stenosis at L4-5 with a left posterior lateral disc herniation into the left lateral recess; multilevel degenerative disc disease; and probable old L1 compression deformity. Another MRI performed on May 18, 2016 showed degenerative disc disease at multiple levels with more disc space narrowing at the L4-5 and L5-S1 levels; mild broad-based disc bulge at L3-4; broad based disc bulging and herniation at L4-5; and broad-based disc bulging at L5-S1. (Tr. 413, 444-445)

Plaintiff saw Dr. Timothy Graven on May 24, 2016 for complaints of low back pain with radiation to the left lower extremity. The pain had become quite severe in the left leg in the past month. Physical examination revealed tenderness over the lumbar spine, positive straight leg raise on the left, positive contralateral straight leg raise, weak EHL tendon on the left patellar, and Achilles strength +2/4. Dr. Graven noted that the MRI showed disc protrusion at L4-5 on the left. He referred Plaintiff for an epidural injection, which was administered by Dr. Graven on June 8, 2016. (Tr. 416, 475)

## **IV. The ALJ's Determination**

In a decision dated January 9, 2017, the ALJ found that Plaintiff met the insured status requirement of the Social Security Act through December 31, 2017. Plaintiff had not engaged in substantial gainful activity since December 5, 2013, his alleged onset date. The ALJ determined that Plaintiff had severe impairments including ischemic heart disease and degenerative disc disease with radiculopathy. His mental impairment of affective disorder did not cause more than a minimal limitation to Plaintiff's ability to perform basic mental work activities and were therefore nonsevere. The ALJ considered the listings in Section 12.00 C of the Listing of Impairments and found that Plaintiff's mental impairments caused no more than mild limitations

in the first three functional areas and no episodes of decompensation of an extended duration in the fourth area. The ALJ's residual functional capacity ("RFC") assessment did reflect the degree of limitation found in the paragraph B mental function analysis. The ALJ further found that Plaintiff did not have an impairment or combination of impairments which met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 11-15)

After carefully considering the entire record, the ALJ determined that Plaintiff had the RFC to perform light work except that he could occasionally climb ramps and stairs and occasionally stoop and crouch. Plaintiff should never climb ladders, ropes, or scaffolds, and never kneel or crawl. In addition, he should have no exposure to hazards such as unprotected heights and dangerous machinery. The ALJ also limited him to only occasional exposure to vibration. Plaintiff could frequently use his upper extremities for handling and fingering. Further, he should alternate between standing and sitting every hour for 1-3 minutes but would remain on task. Given Plaintiff's RFC, the ALJ determined that Plaintiff could not perform any of his past relevant work. In light of his closely approaching advanced age, limited education, work experience, and RFC, the ALJ found that there were jobs in significant numbers which Plaintiff could perform. Such jobs included furniture rental clerk, information clerk, and photo copy machine worker. Thus, the ALJ concluded that Plaintiff had not been under a disability from December 5, 2013 through the date of the decision. (Tr. 15-20)

## V. Legal Standards

A claimant for social security disability benefits must demonstrate that he or she suffers from a physical or mental disability. The Social Security Act defines disability "as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental

9

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

To determine whether a claimant is disabled, the Commissioner engages in a five step evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). Those steps require a claimant to show: (1) that claimant is not engaged in substantial gainful activity; (2) that he has a severe physical or mental impairment or combination of impairments which meets the duration requirement; or (3) he has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) he is unable to return to his past relevant work; and (5) his impairments prevent him from doing any other work. *Id.*

The Court must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means less than a preponderance, but sufficient evidence that a reasonable person would find adequate to support the decision." *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010). "We will not disturb the denial of benefits so long as the ALJ's decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply because we might have reached a different conclusion had we been the initial finder of fact." *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (citations and internal quotations omitted). Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. *See Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court must review the administrative record as a whole and consider: (1) the credibility findings made by the ALJ; (2) the plaintiff's vocational factors; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints

regarding exertional and non-exertional activities and impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts when required which is based upon a proper hypothetical question that sets forth the plaintiff's impairment. *Johnson v. Chater*, 108 F.3d 942, 944 (8th Cir. 1997) (citations and internal quotations omitted).

The ALJ may discount a plaintiff's subjective complaints if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and set forth the inconsistencies in the record. *Marciniak v. Shalala*, 49 F.3d 1350, 1354 (8th Cir. 1995). It is not enough that the record contain inconsistencies; the ALJ must specifically demonstrate that she considered all the evidence. *Id.*

When a plaintiff claims that the ALJ failed to properly consider subjective complaints, the duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to plaintiff's complaints under the *Polaski*[2] factors and whether the evidence so contradicts plaintiff's subjective complaints that the ALJ could discount the testimony as not credible. *Blakeman v. Astrue*, 509 F.3d 878, 879 (8th Cir. 2007) (citation omitted). If inconsistencies in the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion. *Marciniak*, 49 F.3d at 1354.

---

[2] The Eight Circuit Court of Appeals "has long required an ALJ to consider the following factors when evaluating a claimant's credibility: '(1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints.'" *Buckner*, 646 F.3d at 558 (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).

11

## VI. Discussion

In his Brief in Support of the Complaint, Plaintiff claims that the ALJ failed to fully and fairly develop the record. Plaintiff also contends that the ALJ failed to consider the effect of Plaintiff's limited reading ability on the occupational base. Defendant responds that the ALJ properly developed the record and determined Plaintiff's RFC. Defendant further asserts that the ALJ properly determined that Plaintiff could perform other work. Thus, the Defendant asserts that the Court should affirm the Commissioner's decision.

The Court finds that the ALJ's determination is not supported by substantial evidence. The initial denial of Plaintiff's claims lists "Limited education and mental ability – learning disorder" as an alleged impairment affecting Plaintiff's ability to work. (Tr. 121) Plaintiff testified that he had a disability with his reading, and he stated on his function report he read at a 3rd grade level. (Tr. 36, 226) Further, the record indicates that Plaintiff's intelligence is in the average range; his reading level is at late-2nd to mid-3rd grade; and his diagnosis is behaviorally disordered/learning disabled. (Tr. 302) Nothing in the record indicates that Plaintiff's intellectual status has improved over time.

Upon review of the ALJ's decision, the Court finds that the ALJ failed to consider this alleged impairment in determining the severity of Plaintiff's impairments or Plaintiff's RFC. Indeed, the Defendant's Brief in Support of the Complaint does not address Plaintiff's second ground for reversal, which argues that the ALJ failed to consider the effect of Plaintiff's limited reading ability on the occupational base. While Defendant contends that the ALJ's decision is supported by substantial evidence because Plaintiff indicated that he could read and understand English and could handle money, Defendant fails to address whether the ALJ properly

considered Plaintiff's alleged learning disorder and its impact on Plaintiff's ability to perform other work.

The Court finds, based upon the entire record, the ALJ did not properly account for Plaintiff's learning disorder in the decision. Contrary to Defendant's assertion, the ALJ did not discuss Plaintiff's learning disorder at all. The ALJ merely found Plaintiff's affective disorder was nonsevere without mention of Plaintiff's other alleged mental impairment. Further, the RFC determination includes only physical limitations and no mental limitations. "It was error for the ALJ to formulate [Plaintiff's] residual functional capacity without considering all of [his] impairments and the limiting effects of these impairments on [his] activities of daily living, social functioning, concentration, persistence, and paces." *Siebert v. Astrue*, No. 4:11CV1330 CDP, 2012 WL 4336200, at *19 (E.D. Mo. Sept. 21, 2012). Because the ALJ improperly disregarded evidence of Plaintiff's learning disorder including an inability to read, substantial evidence as a whole does not support the ALJ's decision, and the case must be remanded for further evaluation of Plaintiff's alleged learning disorder and its effect on his RFC.

On remand, the ALJ may also want to recontact the VE and submit a new hypothetical. "A hypothetical question must precisely describe a claimant's impairments so that the vocational expert may accurately assess whether jobs exist for the claimant." *Newton v. Chater*, 92 F.3d 688, 694-95 (8th Cir. 1996) (citation omitted). Further, "[a]n expert's testimony based upon an insufficient hypothetical question may not constitute substantial evidence to support a finding of no disability." *Id.* at 695 (citation omitted). As stated above, the ALJ did not address Plaintiff's alleged learning disability. Therefore, the hypothetical question posed to the VE did not include Plaintiff's reading limitation. *See Cain v. Colvin*, No. 4:14 CV 772—DDN, 2015 WL 2092411, at *11 (E.D. Mo. May 5, 2015) (remanding the case for further consideration where "the ALJ did

not account for all of plaintiff's limitations in concentration, persistence and pace in the hypotheticals that she posed to the VE, such that the VE could not properly determine plaintiff's ability to work in jobs available in the economy); *Logan-Wilson*, 2014 WL 468145, at *6 (remanding with directions that the ALJ re-evaluate the RFC with regard to Plaintiff's pace limitation).

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying social security benefits be **REVERSED and REMANDED** to the Commissioner for further proceedings consistent with this Memorandum and Order. An appropriate Order of Remand shall accompany this Memorandum and Order.

Dated this 22nd day of July, 2019.

_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**